**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

                                                        **CASE NO.: 3:25-bk-00891-JAB**

**JAMES RAYMOND OWENS,**

                                                        **Chapter 7**

    **Debtor.**

_____/

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING**
**THE COMPROMISE OF CLAIMS BY AND BETWEEN TRUSTEE AND**
**WEBSTAR TECHNOLOGY GROUP, INC., A WYOMING CORPORATION**

**NOW COMES** Gregory L. Atwater, Chapter 7 Trustee (the "**Trustee**"), by and through the

undersigned counsel, and pursuant to 11 U.S.C. § 105 of the Bankruptcy Code and Federal Rule of

Bankruptcy Procedure 9019, moves for entry of an Order approving a compromise of claims by

and between the Trustee and Webstar Technology Group, Inc., a Wyoming corporation ("**WBSR**").

In support, of this Motion, the Trustee states as follows:

**BACKGROUND**

1.      On March 24, 2025 (the "**Petition Date**"), James Raymond Owens (the "**Debtor**")

filed a voluntary petition for reorganization under Chapter 7 of the United States Bankruptcy Code

(the "**Bankruptcy Case**") (Doc. No. 1).  The Trustee was subsequently appointed as Chapter 7

Trustee in the Bankruptcy Case. The Section 341 Meeting of Creditors was held and concluded on

May 6, 2025.  On May 13, 2025, the Trustee filed an Application to Appoint the undersigned as

counsel for the estate (Doc. No. 14) and on May 13, 2025, the Court entered an Order Approving

the Application (Doc. No. 15).

2.      On the Petition Date, the Debtor filed his Schedules A-J (the "**Schedules**") (Doc.

No. 1).

3. The Trustee's investigation revealed the Debtor is the Settlor, Trustee and Beneficiary of "The Frank T. Perone Trust dated the 1st day of January, 2020" (the "**Trust**").

4. The Trustee's investigation further revealed that on the Petition Date, the Trust was the record (in transfer agent book entry form) holder and beneficial owner of one hundred percent (100%) of the authorized, issued and outstanding Series A Convertible Preferred Stock, *to wit*, 1,000 shares of WBSR, issued and outstanding (out of 1,000 authorized), which represents approximately 75% of the current voting rights of WBSR (the "**Controlling Interest**").

5. The Trustee's investigation further revealed that on the Petition Date, the Trust was the record holder 1,750,000 shares of the outstanding common stock of WBSR, as reflected on the books and records maintained by V Stock Transfer (the "**Common Stock**") (and together, the Controlling Interest and the Common Stock are hereinafter referred to as the "**Stock**").

6. WBSR was incorporated in Wyoming on or about March 10, 2015. WBSR is a publicly traded corporation that trades on over-the-counter pink sheets under the trading symbol "WBSR". WBSR was previously established for the operation of certain licensed and purchased software solutions; however, according to WBSR's SEC Form 10-Q filings, WBSR is currently an early-stage specialty real estate development company devoted to the identification, partnership and development of specialty real estate projects in the United States with a focus on multitenant buildings that can be upgraded to green/energy efficient status and entertainment and resort real estate development.

7. The fifty-two (52) week high trading price for the Common Stock was $0.22 per share and the fifty-two (52) week low trading price for the stock was $0.011 per share.

8. The Trustee's investigation further revealed that the Debtor alleges (i) to be a party to an Employment Agreement with WBSR; (ii) that WBSR is in breach of the Employment

2

Agreement; and (iii) as a result of the alleged breach, the Debtor maintains that he has certain claims against WBSR for among other things, the recovery of back pay and compensation (the "**Claims**").

9.      The Trustee alleges the Stock and the Claims are property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541, for which the Trustee may use, sell or lease, pursuant to 11 U.S.C. § 363.

10.     Prior to the filing of this Motion, the Trustee and TRNG Purchasing Group, a Georgia partnership (the "**Buyer**"), entered into a Purchase Agreement (the "**PSA**"), a copy of which is attached hereto as **Exhibit "A".**

11.     The PSA has two main components: (i) the sale of the Stock; and (ii) a general release of the Claims in favor of the Buyer.

12.     Contemporaneously with the filing of this Motion, the Trustee is also filing a Motion to Sell the Stock to the Buyer free and clear of liens, claims encumbrances and interests pursuant to 11 U.S.C. § 363(f) (the "**Sale Motion**").

13.     Approval of this Compromise is an integral component of the proposed sale and, likewise, approval of the proposed sale is an integral component of this Compromise.

14.     Through this Motion, and in accordance with the terms of the PSA and the Sale Motion, the Trustee seeks the entry of an order approving a compromise of the claims related to the Claims.

15.     The Trustee and estate professionals have devoted considerable time investigating the Stock and the facts related to this Compromise.  Such investigation included reviewing hundreds of pages of banking and financial statements related to the Stock provided to the Trustee by the Debtor immediately after the Bankruptcy Case filing.  The Trustee's investigation also included reviewing hundreds of pages of additional documents produced to the Trustee pursuant to the

3

Trustee's Notices of Fed. R. Bank P. 2004 Exam Duces Tecum issued to (i) the Debtor; (ii) Mr. Ricardo Hanyes, a partner in the Buyer; and (iii) Mr. Donald Keer, also a partner of the Buyer and former legal counsel to the Buyer (*see* Doc. Nos. 22, 36, 40) (altogether, the "**Notices**") and a lengthy depositions of each of those parties.

16.     Based on his investigation, the Trustee has determined that a compromise of the claims related to the Claims and a private sale of the Stock would result in an efficient and cost-effective manner of disposing of the estate's interests in the Stock, while simultaneously creating a benefit to the creditors of this estate.

## THE CLAIMS

17.     The Trustee inquired as to the background of Claims during the Debtor's Rule 2004 Examination.  According to the Debtor, the Trust was a party to that certain Consulting Agreement entered into by and between the Trust and WBSR dated March 1, 2024 (the "**Agreement**").  A copy of the Agreement is attached hereto as **Exhibit "B"**.

18.     The Debtor maintains that WBSR was in breach of the Agreement prior to the Petion Date and that WBSR owes the Debtor $20,000.00 per month for a period of three (3) months, for a total of $60,000.00.  The Board of Directors of WBSR disputes the validity of the Employment Agreement. Among other things, WBSR alleges the Debtor did not provide it with any consulting services.

19.     Pursuant to the PSA, the Buyer has agreed to pay the estate $297,500.00 (the "**Purchase Price**") for a general release of any and all claims.

**RELIEF REQUESTED**

20.     Through this Motion, the Trustee requests approval of the Compromise on the terms set forth above.  Specifically, and without limitation, the Trustee requests approval of: (i) the sale of the Stock pursuant to Section 363(f) of the Bankruptcy Code in exchange for the Purchase Price; and (ii) settlement and release of the bankruptcy estate's Claims against WBSR in exchange for the Purchase Price.

**ARGUMENT AND MEMORANDUM OF LAW**

21.     Federal Rule of Bankruptcy Procedure 9019(a) governs the approval of a compromise or settlement.  The Rule provides, in pertinent part, that "on motion by the trustee and after a hearing, the bankruptcy court may approve a compromise or settlement."  Settlements are favored in bankruptcy "[t]o minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) (recognizing that the law favors compromise of disputes).  The Supreme Court has recognized that "[i]n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Protective Comm. for Independent Stockholder of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

22.     The Supreme Court has stated that in determining whether a court should approve a settlement under Bankruptcy Rule 9019, it should:

> form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Anderson*, 390 U.S. at 424-25.

23.     In evaluating settlements under Rule 9019(a), bankruptcy courts in the Eleventh Circuit apply the four-factor test identified in *Wallis v. Justice Oaks, II Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990): (i) the probability of success in litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *Id.* at 549.

24.     In determining whether to approve a compromise, a bankruptcy court is not obligated to rule on the merits of the various claims, the probability of succeeding on those claims, or conduct a "mini trial" on the merits of the underlying cause of action.  *In re Van Diepen, P.A.*, 236 F. Appx. 498, 503 (11th Cir. 2007); *U.S. v Alaska National Bank of the North (In the Matter of Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, courts consider the *Justice Oaks* factors to determine the fairness of a proposed settlement agreement.  *Chira v. Saal et al. (In re Chira)*, 567 F.3d 1307, 1312-1313 (11th Cir. 2009).  In ruling on a proposed compromise, the Court should "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness."  *Id.* at 608.

25.     Here, the proposed compromise satisfies the criteria for approval under Rule 9019(a) and *Justice Oaks*.

26.     ***The Probability of Success in Litigation***.  The probability of success in litigating the Claims is inherently uncertain.  The Compromise enables the Trustee to obtain a guaranteed payment without the risk or cost of further litigation.  As a result, the Trustee submits that this factor strongly weighs in favor of approval of the Compromise.

27.     ***The Difficulties of Collection***.  It appears to the Trustee that WBSR may not have substantial assets.  Given this, it appears the value of any Claims is at best "nuisance value".  While the difficulties of collecting upon such a claim may not be difficult, the administrative expenses would be significant in relation to any potential recovery.

28.     ***The Complexity of Litigation***.  The contested issues related to the sale and the Claims are somewhat complex.  Specifically, the Debtor holds interest in the Stock to which there appears to be a very limited market.  Monetizing the Stock is inherently difficult and costly.  The Trustee has no choice but to rely on his experience, investigation (and that of his counsel) and his business judgment as to the value of the Stock and the Claims.

29.     ***The Interest of the Creditors***.  The Trustee submits that the compromise serves the paramount interest of the Estate.   Specifically, the compromise: (i) avoids significant litigation/administrative expenses; (ii) results in a significant monetary recovery for the Estate from which to pay valid and allowed claims; and (iii) eliminates the estate's exposure for bringing what could be characterized as frivolous claims.  The Compromise serves the paramount interests of creditors and, as a result, this factor weighs in favor of approval of the settlement.

8

**WHEREFORE**, the Trustee respectfully requests an Order (A) granting this Motion; (B) approving the compromise; and (C) granting the parties such additional relief as is just and proper. A proposed Order is attached hereto as **Exhibit "C".**

Respectfully submitted,

**JOHNSON LAW FIRM, P.A.**

/s/ Eugene H. Johnson
Eugene H. Johnson, Esq.
Florida Bar No. 0032105
Lauren W. Box, Esq.
Florida Bar No. 0106242
301 W. Bay Street, Ste. 1453
Jacksonville, Florida 32202
(904) 652-2400 Telephone
ehj@johnsonlawpa.com
lauren@johnsonlawpa.com

*Attorneys for Gregory L. Atwater,*
*Chapter 7 Trustee*

8

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this 17th day of February, 2026, a true and accurate copy of the foregoing has been furnished by U.S. Mail, postage prepaid, to all parties listed below:

TRNG Purchasing Group
Attn: Don Kerr, Esq.
3663 Greenwood Circle
Chalfont, Pennsylvania  18914

U.S. Securities and Exchange Commission
Attn: Paul S. Atkins, Chair
100 F Street, NE
Washington, DC 20549

U.S. Attorney's Office
Middle District of Florida
Attn: Civil Process Clerk
300 North Hogan Street
Jacksonville, Florida  32202

U.S. Attorney's Office
Middle District of Florida
Attn: Sara C. Sweeney, Esq.
300 North Hogan Street
Jacksonville, Florida  32202

Webstar Technology Group, Inc.
Attn: Ricardo Haynes, its CEO
1100 Peachtree St. NE, Suite 200
Atlanta, GA 30309

Attorney General of the United States
Pamela Bondi
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530

**and all parties on the attached mailing matrix;**

and via CM/ECF electronic notice to all parties that have consented to such service, including but not limited to;

Bryce C. Krampert, *Counsel for the Debtor*;

Daniel N Gonzalez, Esq. *Counsel for Creditor Matthew Greenstein and Creditor Robert E. Thomas, as Chapter 7 Trustee for MJD Legacy Investments, Inc.*; and

United States Trustee.

/s/ Eugene H. Johnson
Eugene H. Johnson, Esq.

9

Label Matrix for local noticing
113A-3
Case 3:25-bk-00891-JAB
Middle District of Florida
Jacksonville
Tue Feb 17 12:44:44 EST 2026

Ally Financial c/o AIS Portfolio Services, L
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

(p)AMERICREDIT FINANCIAL SERVICS DBA GM FINAN
PO BOX 183853
ARLINGTON TX 76096-3853

AmeriCredit Financial Services, Inc. DBA GM
P O Box 183853
Arlington, TX 76096-3853

Gregory L. Atwater
P.O. Box 1865
Orange Park, FL 32067-1865

Berkovitch & Bouskila ESQ
I Lend Funding
1460 Broadway
New York, NY 10036-7329

Blue Sky Funding
12368 Vista Point Circle
Jacksonville, FL 32246-0013

Blue Vine Funding
30 Montgomery Street
Jersey City, NJ 07302-3829

Bluevine Inc.
749 GATEWAY, SUITE G-601
ABILENE, TX 79602-1196

John Blair Boyd
Sorenson Van Leuven Law Firm
Post Office Box 3637
Tallahassee, FL 32315-3637

CFNA
P.O. Box 81344
Cleveland, OH 44188-0001

CREDIT FIRST NA
PO BOX 818011
CLEVELAND, OH 44181-8011

Capital One N.A.
by AIS InfoSource LP as agent
PO Box 71083
Charlotte, NC  28272-1083

Capital One, N.A., successor by merger to Di
PO Box 3025
New Albany, OH  43054-3025

Carson Smithfield, LLC
P.O. Box 660397
Dallas, Texas 75266-0397

Chase Bank
Credit Cards
P.O. Box 6294
Carol Stream, IL 60197-6294

Citibank N.A.
Citibank, N.A.
5800 S Corporate Pl
Sioux Falls, SD  57108-5027

Comenity Bank
Bread Rewards Card
P.O. Box 182119
Columbus OH 43218-2119

(p)FIRST NATIONAL BANK OF OMAHA
1601 DODGE ST
STOP CODE 3113
OMAHA NE 68102-1637

(p)CREDIT CONTROL  LLC
ATTN CORRESPONDENCE
3300 RIDER TRAIL S
SUITE 500
EARTH CITY MO 63045-1338

(p)CREDIT FRESH
200 CONTINENTAL DRIVE SUITE 401
NEWARK DE 19713-4337

Discover Card
P.O. Box 71242
Charlotte, NC 28272-1242

Diversified Adjustment Services
P.O. Box 32145
Fridley, MN 55432-0145

(p)DIVIDEND FINANCE  LLC
ATTN C/O WEINSTEIN & RILEY P S
1415 WESTERN AVE
SUITE #700
SEATTLE WA 98101-2051

Don Keer ESQ
3663 Greenwood Circle
Chalfont, PA 18914-3401

Drivrz Financial
P.O. Box 200
Williamsville, NY 14231-0200

F.H. Cann & Associates
100 Domain Drive, Suite 200
Exeter, NH 03833-4904

F.H. Cann Inc.
QuickBooks Capital
100 Domain Drive
Suit #200
Exeter, NH 03833-4904

FSB Blaze Card
P.O. Box 2534
Omaha, NE 68103-2534

First Citizens Bank
Credit Cards
P.O. Box 63001
Charlotte, NC 28263-3001

First Citizens Bank
P.O. Box 28203
Raleigh NC 27611-8203

(p)FIRST CITIZENS BANK TRUST COMPANY
P O BOX 25187
RALEIGH NC 27611-5187

Melbalynn Fisher
Ghidotti Berger LLP
10800 Biscayne Blvd.
Ste 201
Miami, FL 33161-7538

Florida Credit Union
c/o J. Blair Boyd
Post Office Box 3637
Tallahassee, FL 32315-3637

Florida Dept of Revenue
P.O. Box 6668
Tallahassee, FL 32314-6668

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

GM Financial
P.O. Box 650595
Dallas, Texas 75265-0595

Daniel N Gonzalez
Meland Budwick, PA
200 S. Biscayne Blvd., Suite 3200
Miami, FL 33131-5323

Matthew Greenstein
c/o Daniel N. Gonzalez, Esq.
Meland Budwick, PA
200 South Biscayne Blvd.
Suite 3200
Miami, FL 33131-5323

IRS
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

Eugene H Johnson
Johnson Law Firm, P.A.
301 W. Bay Street
Suite 1453
Jacksonville, FL 32202-5106

Bryce C Krampert
Postillion Law Group LLC
12724 Gran Bay Parkway West, Suite 410
Jacksonville, FL 32258-9486

Latham, Luna, Eden & Beaudine, LLP
c/o Justin M. Luna, Esquire
201 S. Orange Avenue, Ste 1400
Orlando, FL 32801-3483

Loan Depot
P.O. Box 5710
Chicago, Illinois 60680-5641

LoanDepot.com, LLC
Ghidotti Berger LLP
10800 Biscayne Blvd., Suite 201
Miami, FL 33161-7538

MERRICK BANK
Resurgent Capital Services
PO Box 10368
Greenville, SC 29603-0368

Mariner Finance
550 Wells Road
Orange Park, Florida 32073-2950

Mariner Finance (PS)
Mariner Finance
8110 Corporate Drive
Nottingham, MD 21236-5034

Matthew Greenstein
c/o Daniel N. Gonzalez, Esq.
Meland Budwick, P.A.
200 S Biscayne Blvd., Ste 3200
Miami, FL 33131-5323

Merrick Bank
P.O. Box 660702
Dallas TX 75266-0702

James Raymond Owens
908 Churchhill Lane
St. Augustine, FL 32092-1738

(p)PROSPER MARKETPLACE INC
221 MAIN STREET STE 300
SAN FRANCISCO CA 94105-1909

Quantum3 Group LLC as agent for
Comenity Capital Bank
PO Box 788
Kirkland, WA  98083-0788

Quantum3 Group LLC as agent for
Plumeria Accord Holdings LLC
PO Box 788
Kirkland, WA  98083-0788

Quantum3 Group LLC as agent for
Velocity Investments LLC
PO Box 788
Kirkland, WA  98083-0788

Resurgent Receivables, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Revenue Recovery Solutions
323 10th Ave West, Suite 300
Palmetto, FL 34221-5042

Robert E Thomas for MJD Legacy Investments I
C/O Meland Budwick, PA
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-5340

Robert E. Thomas, as Chapter 7 Trustee for M
c/o Daniel N. Gonzalez, Esq.
Meland Budwick, P.A.
200 S Biscayne Blvd
Suite 3200
Miami, FL 33131-5323

Robert Thomas, C7 trustee in re MJD Legacy I
c/o Daniel N. Gonzalez, Esq.
Meland Budwick, P.A.
200 S. Biscayne Blvd., Ste 3200
Miami, FL 33131-5323

(p)ROUNDPOINT MORTGAGE SERVICING CORPORATION
446 WRENPLACE ROAD
FORT MILL SC 29715-0200

(p)SPRING OAKS CAPITAL  LLC
1400 CROSSWAYS BLVD STE 100B
CHESAPEAKE VA 23320-0207

Spring Oaks Capital SPV, LLC
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

St. Johns County Tax Collector
Dennis W. Hollingswo
Post Office Box 9001
Saint Augustine FL 32085-9001

Synchrony Bank
Care Credit
P.O. Box 71707
Philadelphia PA 19176-1707

Synchrony Bank
Ebay Mastercard
P.O. Box 71707
Philadelphia, PA 19176-1707

Synchrony Bank
Paypal Credit
P.O. Box 71707
Philadelphia PA 19176-1707

Synchrony Bank
Paypal Credit
P.O. Box 71718
Philadelphia, PA 19176-1718

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

US Bankruptcy Court
Middle District of Florida
400 Washington Street
Orlando, Florida 32801-2217

United States Trustee - JAX 13/7
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

(p)UPGRADE  INC
2 N CENTRAL AVE
10TH FLOOR
PHOENIX AZ 85004-4422

Steven  M. Vanderwilt
9940 Hood Road
Jacksonville, FL 32257-1134

Verizon
by AIS InfoSource LP as agent
PO Box 4457
Houston, TX  77210-4457

Vista Point Services Funding
12368 Vista Point Circle
Jacksonville, FL 32246-0013

(p)VYSTAR CREDIT UNION
PO BOX 45085
JACKSONVILLE FL 32232-5085

Web Bank
215 South State Street
Suite #1000
Salt Lake City, UT 84111-2336

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

AmeriCredit Financial Services, Inc.
dba GM Financial
P O Box 183853
Arlington, TX 76096

Community Bank
P.O. Box 2557
Omaha, NE 68103

Credit Control LLC
3300 Rider Trail South, Suite 500
Earth City, MO 63045

Credit Fresh
200 Continental Drive
Suite #401
Newark, DE 19713

Dividend Finance, LLC
c/o Weinstein & Riley, PS
749 Gateway, Suite G-601
Abilene, TX  79602

First Citizens Bank & Trust Company
Attn: Bankruptcy Department
P.O. Box 25187
Raleigh, NC 27611

Jefferson Capital Systems, LLC
PO BOX 7999
SAINT CLOUD, MN 56302-9617

Prosper Card
P.O. Box 650078
Dallas, TX 75265

Round Point Mortgage
446 Wren place Road
Suite #101
Fort Mill, South Carolina 29715


Spring Oaks Capital
1400 Crossways Blvd
Chesapeake, VA 23320

U.S. Bank National Association
Bankruptcy Department
PO Box 108
Saint Louis MO 63166-0108

(d)US Bank
Credit Cards
P.O. Box 790179
St. Louis, MO 63179


Upgrade Inc.
275 Battery Street
San Francisco, CA 94111

Vystar Credit Union
P.O. Box 45085
Jacksonville, Florida 32232

End of Label Matrix
Mailable recipients     78
Bypassed recipients      0
Total                   78

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

## PURCHASE AGREEMENT

This Purchase Agreement ("**Agreement**") is entered into as of this 29th day of January, 2026 (the "**Effective Date**"), by and between Gregory L. Atwater, Chapter 7 Trustee (and not individually) ("**Seller**") of the bankruptcy estate of the Debtor (defined below) and TRNG Purchasing Group, a Georgia partnership, or its assigns ("**Buyer**").

### RECITALS:

A.      On March 24, 2025 (the "**Petition Date**"), James Raymond Owens (the "**Debtor**") filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "**Code**").

B.      Seller is the Chapter 7 Trustee of the bankruptcy estate of Debtor (the "**Bankruptcy Estate**") pursuant to that certain bankruptcy case filed in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division (the "**Bankruptcy Court**"), and assigned case number **3:25-bk-00891-JAB** (the "**Bankruptcy Case**").

C.      On May 6, 2025, the Trustee conducted the Section 341 Meeting of Creditors in the Bankruptcy Case.

D.      The Trustee's investigation revealed the Debtor is the Settlor, Trustee and Beneficiary of "The Frank T. Perone Trust dated the 1st day of January, 2020" (the "**Trust**").

E.      The Trustee's investigation further revealed that on the Petition Date, the Trust was the record (in transfer agent book entry form) holder and beneficial owner of one hundred percent of the authorized, issued and outstanding Series A Convertible Preferred Stock, to wit, 1,000 shares of Webstar Technology Group, Inc., a Wyoming corporation ("**WBSR**"), issued and outstanding (out of 1,000 authorized), which represents approximately 75% of the current voting rights of WBSR (the "**Controlling Interest**").

F.      The Trustee's investigation further revealed that on the Petition Date, the Trust was the record holder 1,750,000 shares of the outstanding common stock of WBSR, as reflected on the books and records maintained by V Stock Transfer (the "**Common Stock**") (and together, the Controlling Interest and the Common Stock are hereinafter referred to as the "**Stock**").

G.      The Trustee's investigation further revealed that the Debtor alleges (i) to be a party to an Employment Agreement with WBSR; (ii) that WBSR is in breach of the Employment Agreement; and (iii) as a result of the alleged breach, the Debtor has certain claims against WBSR for among other things, the recovery of back pay and compensation (the "**Claims**").

H.      The Trustee alleges the Stock and the Claims are property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541, for which the Trustee may use, sell or lease, pursuant to 11 U.S.C. § 363.

I.      Upon the terms and subject to the conditions hereinafter set forth, which are subject to approval by the Bankruptcy Court, Seller desires to sell, assign, convey, and transfer to Buyer, and Buyer desires to purchase and acquire from Seller, all of the Bankruptcy Estate's interest in

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

the Stock, and the Buyer desires to obtain a full and final general release of the Claims (and any other claims) the Debtor and/or the Trust may have against WBSR.

J.    All sales proceeds payable to Seller as a result of the transaction in this Agreement shall be distributed as authorized by Bankruptcy Court approval.

NOW, THEREFORE, in consideration of the premises, and the mutual representations, warranties, covenants and agreements hereinafter set forth, and each intending to be legally bound hereby, the parties hereto agree as follows:

## ARTICLE I
## SALE OF ASSETS AND ASSUMPTION OF LIABILITIES

1.0    **Purchase of Interest.** As of the Closing Date (as defined in Section 6.1) and subject to Article V, Seller shall sell, assign, transfer, convey and deliver to Buyer, free and clear from all claims, liens, encumbrances and interests, and Buyer shall accept and purchase, all of Seller's right, title and interest in and to the Stock for the consideration set forth in Article II below.

1.1    **Asset Transfer; Passage of Title; Delivery.** Upon the Closing (defined below), all of Seller's right, title and interest to the Stock shall pass to Buyer free and clear of all claims, mortgages, pledges, liens, security interests, restrictions, encumbrances, charges, title retention, conditional sale or other security arrangements, and Seller shall deliver to Buyer an assignment and Bill of Sale sufficient to convey to Buyer good and marketable title to the Stock.

## ARTICLE II
## PURCHASE PRICE AND DEPOSIT

2.0    **Purchase Price.** Subject to the terms and conditions set forth herein and approval of the Bankruptcy Court, the aggregate purchase price ("**Purchase Price**") for the Stock shall be Two Hundred Ninety-Seven Thousand Five Hundred and 00/100 Dollars ($297,500.00) paid by Buyer to Seller by wire transfer or certified funds at the Closing.

2.1    **Deposit.** Contemporaneously with the execution of this Agreement, Buyer shall deposit with Seller of Twenty-Nine Thousand Seven Hundred Fifty and 00/100 Dollars ($29,750.00) to be held by Seller as a deposit (the "**Deposit**") that shall be applied to the Purchase Price at Closing. The Deposit shall be forfeited to Seller should Buyer fail to consummate the purchase of the Interest following Seller's compliance with the conditions set forth in Article V.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this Article III are true, correct and complete as of the date of this Agreement and the Closing Date.

3.0    **Authorization.** Seller, subject to approval of the Bankruptcy Court, has full power and authority to execute and deliver this Agreement and the other agreements and instruments referenced herein and to perform Seller's obligations hereunder and thereunder. Seller is the Chapter 7 Trustee of the Debtor's Bankruptcy Estate in the Bankruptcy Case and Seller, at the expense of the Bankruptcy Estate, shall obtain the requisite power and lawful authority to sell the

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

Stock from the Bankruptcy Court; however, Purchaser shall cause and/or be responsible for taking any and all steps necessary to register the sale with the U.S. Securities and Exchange Commission (the "SEC") and the SEC's EDGAR filing system, including but not limited to, the filing a Form 8-K with the SEC describing the change of control of WBSR, resignation of officer/director and/or appointment of new officer(s)/director(s).

**3.1    AS-IS; WHERE-IS; WITH ALL FAULTS.** Except as otherwise set forth herein, Seller makes no representations or warranties whatsoever, express or implied with respect to any matter relating to the transactions contemplated herein and the Stock, including without limitation, the condition of the Stock, whether Buyer's acquisition of the Stock from the Seller is sufficient under applicable law to provide the Buyer with good and marketable title to the Stock or whether Buyer's acquisition of the Stock from the Seller will provide with any actual ownership interest in the Stock and or whether the proposed sale comports with and/or does not violate any provisions of the Securities Exchange Act of 1934.

**3.2    SELLER HEREBY DISCLAIMS ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE STOCK INCLUDING, THE WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. ACCORDINGLY, BUYER WILL ACCEPT THE STOCK AT THE CLOSING "AS-IS," "WHERE-IS" AND "WITH ALL FAULTS." THE PROVISIONS CONTAINED IN SECTION 3.1 AND 3.2 SHALL SURVIVE CLOSING.**

### ARTICLE IV
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article IV are true, correct and complete as of the date of this Agreement and the Closing Date.

**4.0    Power and Authority; No Default.** This Agreement, when signed and delivered by Buyer, will be the valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, subject to the laws relating to bankruptcy, insolvency and relief of the Debtor, and rules and laws governing specific performance, injunctions, relief and other equitable remedies.

**4.1    Authorization for this Agreement.** No authorization, approval, consent of, or filing with any governmental body, department, bureau, agency, public board, authority or any other third party is required for the consummation by Buyer of the transactions contemplated by this Agreement.

**4.2    No Conflicts.** The execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated hereby will not result in (a) a violation or constitute, with or without the passage of time and giving of notice, a default under any provision of any agreements to which Buyer is a party; (b) a breach or violation in any material respect of any material agreement, judgment, order, writ, decree; or (c) the creation of any material lien, charge or encumbrance upon any assets of Buyer; or (d) the suspension, revocation, impairment, forfeiture, or non-renewal of any material permit, license, authorization, or approval applicable to Buyer, its business or operations or any of her assets or properties.

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

## ARTICLE V
## BANKRUPTCY COURT MATTERS

**5.0** **Bankruptcy Court Approval.** The sale of the Stock and approval of the Release (defined below) is subject to approval of the Bankruptcy Court. Upon execution of this Agreement and the Deposit clearing the Seller's bank account, Seller shall promptly file (or shall have filed) a motion or motions with the Bankruptcy Court under 11 U.S.C. § 363(f) seeking entry of an order, which approves the sale of the Stock and of the Release (defined below) free and clear of all claims, liens, encumbrances and interests (the "**Sale Motion**") and the entry of an Order approving this Agreement (the "**Sale Order**"). Buyer and Seller shall prosecute the Sale Motion in good faith. Buyer acknowledges the Sale Motion is subject to objection and/or withdrawal by the Trustee in the event of an overbid and in such case, an auction may occur.

**5.1** **Sale Order.** Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining the Sale Order, including, furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement.

**5.2** **Appeal.** In the event the entry of the Sale Order shall be appealed, Seller and Buyer shall use their respective reasonable efforts to defend such appeal.

**5.3** **Return of Deposit.** Buyer shall be entitled to a return of the Deposit should the Sale Order not be entered by the Bankruptcy Court.

## ARTICLE VI
## CLOSING AND CLOSING DELIVERIES

**6.0** **Closing.** The closing of the purchase and sale provided for herein (the "**Closing**") shall take place at the office of Seller's counsel, Johnson Law Firm, P.A., 301 W. Bay Street, Ste 1453, Jacksonville, Florida 32202, or such other location agreed to by both parties, and the parties shall use their best efforts to close the transaction within thirty (30) days following the entry of the Sale Order becoming final and non-appealable (the "**Closing Date**").

**6.1** **Closing Deliveries.** At the Closing:

(a) Buyer shall authorize release of the Deposit to Seller to be applied to the Purchase Price, and shall pay any remaining balance of the Purchase Price by certified funds.

(b) Seller shall sell, convey, assign and transfer the Stock to Buyer by assignment and bill of sale, with no warranties of title whatsoever other than as expressly provided in the Sale Order, and such other instruments of transfer, as counsel for Buyer may reasonably require as necessary or desirable to convey to and vest in Buyer good and marketable title to the Stock, free and clear of any and all claims, liens, encumbrances and interests (whether absolute, accrued, contingent or otherwise) to the extent required in this Agreement. For the avoidance of doubt, the Buyer shall be solely responsible for any SEC (or other governmental) filings/approvals/reporting and any costs associated therewith.

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

(c)     Seller shall execute and deliver to the Buyer, a general release of the Claims and any other claims the Debtor and/or the Trust may have or could have asserted against WBSR (the "**Release**").

(d)     The respective parties shall, from time to time after the Closing Date but only before the bankruptcy case is closed, execute and deliver to each other such further instruments and documents, in a form reasonably satisfactory to counsel for Buyer and to counsel for Seller, as may be necessary or appropriate to effectively transfer and assign to and vest in Buyer title to the Stock and to consummate the transactions contemplated by this Agreement.

(e)     Buyer shall be responsible for payment of all applicable sales, transfer documentary, filing, and other taxes and fees (other than Seller's attorneys' fees) that may be due or payable as a result of the conveyance, assignment, transfer, or delivery of the Stock being conveyed and transferred herein. Each party shall be responsible for its own attorneys' fees, broker fees, or other professional fees occasioned by the transaction contemplated hereby.

(f)     Seller shall provide Buyer with evidence that the Bankruptcy Court has entered the Sale Order.

## ARTICLE VII
## CONDITIONS OF CLOSING; TERMINATION

7.0     **Closing Conditions.** The obligation of Buyer to close hereunder shall be subject to the fulfillment and satisfaction, prior to or at the Closing, of the following conditions by Seller or the written waiver thereof by Buyer:

(a)     The Sale Order shall have been entered;

(b)     No stay, injunction or restraining order shall be in effect to forbid or enjoin the consummation of the transactions contemplated by this Agreement; and

(c)     Buyer shall have received (i) an Assignment and Bill of Sale transferring all of the Bankruptcy Estate's right, title and interest in and to the Stock to Buyer and (ii) the Release, both in form and substance satisfactory to Buyer and Buyer's counsel, in their reasonable discretion.

7.1     **Termination.** This Agreement may only be terminated prior to the Closing as follows:

(a)     at the election of Seller, if the Buyer fails to pay the Purchase Price at Closing, if any one or more of the conditions to Buyer's obligation to close has not been fulfilled, or if the Seller receives a competing overbid prior to the entry of the Sale Order;

(b)     at any time prior to the Closing Date, by mutual written consent of Seller and Buyer. If this Agreement terminates by mutual consent, it shall become null and void and have no further force or effect, except as expressly provided herein.

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

**7.2     Return of Deposit.**

(a)     In the event that this Agreement is terminated under Section 7.1 or 7.2 above, the Seller shall be entitled to retain the Deposit and shall be Seller's sole and exclusive remedy Buyer, in full satisfaction of all of Buyer's obligations hereunder.

## ARTICLE VIII
## MISCELLANEOUS

**8.0     Choice of Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of Florida.

**8.1     Waiver of Jury.** THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL WITH RESPECT TO ANY CLAIM OR DISPUTE THAT ARISES OUT OF OR RELATES TO THIS AGREEMENT TO THE FULLEST EXTENT ALLOWED BY LAW.

**8.2     Enforcement.** The parties agree that the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, shall have exclusive jurisdiction to enforce and construe the provisions of this Agreement.

**8.3     Authority.** The individuals executing this Agreement hereby represent and warrant that they are empowered and duly authorized to so execute this Agreement on behalf of the parties they represent.

**8.4     No Third-Party Beneficiaries.** This Agreement shall inure solely to the benefit of and be binding solely upon Buyer and Seller and their respective successors and assigns (it being the intent of the parties that nothing in this Agreement, express or implied, shall confer upon any other person any rights or remedies hereunder).

**8.5     Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder (each, a "**Notice**") shall be in writing and addressed to the parties at the addresses set forth below (or to such other address that may be designated by the receiving party from time to time in accordance with this Section). Any party may update its notice address herein upon providing five (5) days prior written notice to the other parties hereto.

Notices to Seller:                      Gregory Atwarer, Trustee
                                        c/o Johnson Law Firm, P.A.
                                        Attn: Eugene H. Johnson, Esq.
                                        301 W. Bay Street, Ste 1453
                                        Jacksonville, Florida 32202
                                        (904) 652-2400
                                        ehj@johnsonlawpa.com

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

Notices to Buyer:

TRNG Purchasing Group
Attn: Don Kerr, Esq.
3663 Greenwood Circle
Chalfont, Pennsylvania 18914
215-962-9378
don@keeresq.com

**8.6     Counterparts.** This Agreement may be executed in any number of counterparts, any one and all of which shall constitute the agreement of the parties, and each of which shall be deemed an original, but all of which together shall constitute one and the same document. Counterpart signature pages transmitted via fax or e-mail shall be deemed to be originals for all purposes.

**8.7     Construction.** Words of inclusion shall not be construed as terms of limitation herein, so that references to "included" matters shall be regarded as non-exclusive, non-characterizing illustrations.

**8.8     Severability.** This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of this Agreement or the application thereof to any person or circumstances shall, for any reason and to the extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby but instead shall be enforced to the greatest extent permitted by law. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

**8.9     Expenses.** Buyer and Seller shall each be solely responsible and bear all of its own respective expenses, including without limitation expenses of legal counsel, accountants, and other advisors or brokers, incurred at any time in connection with pursuing or consummating this Agreement or the transaction contemplated thereby.

**(SIGNATURES ON FOLLOWING PAGE)**

Docusign Envelope ID: 1242BD12-7049-4403-9FC5-00F6D0297A4B

IN WITNESS WHEREOF, the parties' duly authorized officers have executed this Purchase and Sale Agreement as of the day and year first above written.

**SELLER:**

Gregory L. Atwater, in his capacity as Chapter 7 Trustee (and not individually) of the bankruptcy estate of *In re James Raymond Owens*; Case 3:25-bk-00891-JAB (Bankr. M.D. Fla., JAX Div.)

**BUYER:**

**TRNG PURCHASING GROUP, a Georgia Partnership**

By: Ricardo Haynes

By: Eric Collins

By: Lance Lehr

By: Donald Keer

8 | P a g e

## CONSULTING AGREEMENT

Consulting Agreement, dated as of March 1, 2024 (the "**Agreement**"), **Webstar Technology Group, Inc.** , a corporation organized and existing under the laws of the State of Wyoming with its head office located at 4231 Walnut Bend, Jacksonville, FL 32257, (the "**Company**"), and the **Frank T. Perone Irrevocable Trust**, a Florida trust, located at  908 Churchhill Lane, St. Augustine Fl 32092  (the "**Consultant**").

### WITNESSETH :

WHEREAS, the Company wishes to retain the Consultant and the Consultant and the Company have agreed to undertake and perform the obligations herein set forth, subject to the terms hereof.

NOW, THEREFORE, in consideration of the promises, covenants and agreements set forth herein, the parties agree as follows:

1. Engagement of Consultant; Duties. The Company hereby engages the Consultant, and the Consultant agrees to be engaged on a non-exclusive basis, as a consultant on various matters and situations. The Consultant agrees that it will, as an independent contractor, serve as a consultant to the Company and affiliates, to render such advice, consultation, information, and services to the managers and/or officers of the Company regarding general financial and business matters including, among other related services.

It shall be expressly understood that Consultant shall have no power to bind Company to any contract or obligation or to transact any business in Company's name or on behalf of Company in any manner. The Consultant's role is that of a consultant and advisor to, and not that of a manager or employee of the Company. The Consultant represents and warrants that it not subject to any agreement, covenant or legal restraint which precludes or otherwise restricts its ability to enter into this Agreement and perform the services contemplated hereby.

2. Term. The Consultant's engagement shall commence on March 1, 2024, and shall continue for a term of three (3) months.

3. Compensation. The Consultant shall receive, and the Company shall deliver Twenty Thousand ($20,000) Dollars per month.

4. Independent Contractor. The parties agree that the Company shall have no right to control or direct the details, manner or means by which the Consultant accomplishes the results of the services performed hereunder, it being acknowledged that the Consultant shall for all purposes be an independent contractor of the Company.

IN WITNESS WHEREOF, the parties hereto have set their hands as of the date first written above.

☐

☐

WEBSTAR TECHNOLOGY GROUP, INC.                    Frank T. Perone Irrevocable Trust

By: _____        By: _____

Name:        Don Roberts            Name:        James R. Owens

Title:        President/CEO          Title:        Trustee

EXHBIIT "C"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
<u>**JACKSONVILLE DIVISION**</u>

In re:

                                           **CASE NO.: 3:25-bk-00891-JAB**

**JAMES RAYMOND OWENS,**

                                           **Chapter 7**

       **Debtor.**

_____/

**ORDER GRANTING THE TRUSTEE'S**
**MOTION FOR ENTRY OF AN ORDER APPROVING THE**
**COMPROMISE OF CLAIMS BY AND BETWEEN TRUSTEE AND**
<u>**WEBSTAR TECHNOLOGY GROUP, INC., A WYOMING CORPORATION**</u>

THIS MATTER came before the Court for hearing on _____, _____, ____, 2026 at ___:___ a.m./p.m. (the "**Hearing**") upon the Trustee's Motion for Entry of Order Approving Compromise of Claims by and between the Trustee and Webstar Technology Group, Inc., a Wyoming Corporation (Doc. No. ____). The Trustee, the Debtor and Creditors Matthew Greenstein and Robert E. Thomas as Chapter 7 Trustee for MJD Legacy Investments, Inc., all via their respective counsel, were present at the Hearing. No party filed an objection to the Motion prior to or at the Hearing, and the Court deems the Motion to be unopposed.

Therefore, it is **ORDERED:**

1.        The Motion is **GRANTED**.

2.        The parties are ordered to comply with the terms of the Compromise.

3.        The Court reserves jurisdiction to resolve or adjudicate any and all disputes that may arise out of, or relate to, those matters addressed by this Order.

Attorney Eugene H. Johnson, Esq. is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this Order.

2